UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CHRISTINE EARL,

         Plaintiff,

    v.

VNU USA, INC., NIELSEN
MEDIA RESEARCH, INC.,

         Defendants.

NO. CIV. S-08-0050 FCD KJM

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

    This employment discrimination case, in which plaintiff Christine Earl ("plaintiff" or "Earl") alleges age and disability discrimination, is before the court on defendants' motion for summary judgment, or alternatively, summary adjudication of claims pursuant to Federal Rule of Civil Procedure 56.  Plaintiff does not oppose defendant Nielsen Company (US) Inc.'s motion. (Stmt. of Non-Opp'n [Docket #114], filed July 30, 2009.) Accordingly, defendant Nielsen Company (US) Inc.'s motion for summary judgment is GRANTED.  However, plaintiff opposes the motion brought by defendant Nielsen Media Research, Inc.

1

("defendant" or "Nielsen").  The court heard oral argument on the

motion on September 4, 2009.  For the reasons set forth below,

defendant Nielsen Media Research, Inc.'s motion is GRANTED.

### BACKGROUND[1]

Plaintiff Earl was employed by defendant Nielsen as a

Membership Representative ("MR") in San Francisco LPM Market Area

in Benicia, California.  (UF ¶ 1.)  Plaintiff was hired by

Nielsen on July 1, 1994 as an "at-will" employee.  (UF ¶¶ 2, 6.)

Plaintiff's date of birth is June 7, 1947; she was approximately

47 years old when hired by defendant.  (UF ¶ 3; DF ¶ 1.)

In its policies and procedures guide, defendant Nielsen

describes itself as "the world's leading provider of marketing

information, audience measurement, and business media products

and services."  (Def.'s Ex. G.)  Defendant represents that it

"strives to provide statistically clean and accurate samples,

which is achieved through special attention on gaining membership

from Basic households."  (Def.'s Ex. J.)  An MR is provided with

a list of homes, a "Spec report," the first of which is called

the "basic."  (DF ¶ 22.)  The basic home has been identified as

representing a certain desirable demographic.  (DF ¶ 22.)  If the

---

[1]    Unless otherwise noted, the facts herein are
undisputed.  (See Def.'s Response to Pl.'s Response to Stmt. of
Undisputed Facts in Supp. of Mot. for Summ. J. ("UF"), filed Aug.
7, 2009.)  Where the facts are disputed, the court recounts
plaintiff's version of the facts.  (See Def.'s Resp. to Pl.'s
Stmt. Of Disputed Facts ("DF"), filed Aug. 7, 2009.)

Both plaintiff and defendant have filed objections to
evidence.  The court has reviewed the objections and the disputed
evidence and relies only on admissible evidence herein.  See Orr
v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) ("A
trial court can only consider admissible evidence in ruling on a
motion for summary judgment.").

1  basic home cannot be recruited, the MR is required to work down

2  the list of alternates until finding a home whose demographics

3  match those of the basic.  (DF ¶ 22.)

4       At all relevant times, defendant had a performance

5  improvement discipline policy entitled "Disciplinary

6  Action/Performance Counseling."  (UF ¶ 7; Def.'s Ex. I at 17.)

7  Based upon the situation, an employee may receive either verbal

8  notification and/or a written or final notification.  (UF ¶ 7;

9  Def.'s Ex. I at 17.)  However, the policy also provides that

10 "management may eliminate steps in this process and accelerate

11 the process up to and including termination in any case."

12 (Def.'s Ex. I at 17.)  Moreover, the policy provides that it does

13 not negate the "'at-will' nature of employment."  (<u>Id.</u>)

14      During plaintiff's employment, defendant also had various

15 policies relating to the duties of Membership Representatives.

16 If a MR purchased a gift for a household, the MR was required to

17 follow defendant's current gift policies.  (UF ¶ 8.)  Following

18 September 11, 2001, defendant initiated a policy forbidding MRs

19 from leaving unattended gifts at the doorsteps of potential

20 households.  (UF ¶ 9.)  Plaintiff understood that she was

21 obligated to comply with this policy.  (UF ¶ 10.)  However, in

22 August 2005, plaintiff left an unattended gift at the doorstep of

23 a potential household; she received a verbal warning from her

24 supervisor.  (UF ¶¶ 11-12.)  Following this violation, defendant

25 sent an e-mail to all MRs company-wide on August 21, 2005,

26 reiterating the Company's policy against leaving unattended gifts

27 at the doorsteps of potential households.  (Decl. of Sally

28 Dollard ("Dollard Decl."), filed July 10, 2009, ¶ 3.)  On January

29, 2006, plaintiff left a box of candy at the doorstep of an unoccupied home she was attempting to recruit.  (UF ¶ 13.)

Pursuant to company policy, it is "recommended before the initial contact" with a potential household that the MR print out a Spec report and obtain a Stat Research map.  (Pl.'s Ex. E.) The company procedure manual notes that "Stat Research will not offer any assistance in locating a housing unit without having a printed Spec map."  (Id.)  Plaintiff testified at her deposition that she was required to have the Spec map with her.  (Dep. of Christine Earl ("Earl Dep.") at 184:7-13.)  Plaintiff also testified that she understood a MR could be fired for failing to have a Spec map in the car.  (Id. at 223:3-7; UF ¶ 17.)  However, in February 2006, while on a temporary assignment in New York, plaintiff recruited a home without a Spec map.  (UF ¶ 16.)  When a supervisor e-mailed plaintiff inquiring how she had signed a "spec" without the Spec map, plaintiff responded, "Magic?" (Pl.'s Ex. F.)

After plaintiff committed these policy violations, plaintiff's direct supervisor, Sally Dollard ("Dollard"), issued a verbal warning and documented her counseling session with plaintiff in the form of a Developmental Improvement Plan ("DIP").  (UF ¶ 18.)  According to the DIP, Dollard counseled plaintiff on her violation of defendant's gift policy and Spec map policy.  (UF ¶ 19.)  Dollard also expressed displeasure with plaintiff's attitude, noting plaintiff's response to a supervisor's question was not only "inappropriate for a business question from a supervisor but it also demonstrated a lack of respect for the policy and procedure set forth by Nielson Media

4

1  Research." (UF ¶ 19.).  Moreover, according to the DIP,

2  plaintiff failed a Quality Assurance ("QA") audit for failing to

3  train a recruit sufficiently.  (UF ¶ 20.)  The DIP also stated,

4  "Your performance WILL BE REVIEWED PERIODICALLY to determine if

5  you are meeting stated expectations in the job.  Failure TO MEET

6  THESE EXPECTATIONS in the future MAY RESULT IN the implementation

7  of the DISCIPLINARY PROCESS." (UF ¶ 21.)  Plaintiff signed and

8  acknowledged the DIP on March 27, 2006.  (UF ¶ 22.)

9       In September/October 2006, plaintiff received an overall

10  satisfactory performance evaluation.  (DF ¶ 32; Pl.'s Ex. J.)

11  However, the evaluation noted that plaintiff needed improvement

12  in: (1) entering contract notes within 24 hours; (2) submitting

13  expense books accurately; and (3) ensuring that she always

14  follows policy and procedure.  (Id.)

15       Subsequently, plaintiff committed another violation of

16  defendant's policies and procedures.  (See UF ¶ 28.)  Company

17  policy requires MRs to verify that the housing unit and address

18  are correct when recruiting a household.  (UF ¶ 23.)  MRs are

19  responsible for initially inputting all of the household data

20  correctly.  (UF ¶ 24.)  All signed households must have a

21  completed Panel Agreement.  A Panel Agreement contains the

22  household name, household number and Spec ID, complete household

23  address verified from the Spec Report, zip code, and household

24  member's signature and Field Associate's signature.  (UF ¶ 25.)

25  According to defendant's Sample Procedures Documentation,

26  "[e]xtreme attention to detail is required in order to accurately

27  complete a Panel Agreement with all areas completed with the

28  correct information." (UF ¶ 26.)  On October 28, 2006, while

working on a temporary assignment in Texas, plaintiff recruited an Alternate household located at 319 Forest Lake Drive, which was listed as "Alternate 11." However, when plaintiff filled out the Initial Demo Questionnaire and Panel Agreement and inputted the household information into the company's computer software, she inaccurately listed the recruited home as 327 Forest Lake Drive, which was listed as "Alternate 9." (UF ¶ 27.) As a result of these errors, plaintiff had enrolled the wrong household for equipment installation.[2] (UF ¶ 27.) When Dollard spoke to plaintiff about the situation, Dollard believed that plaintiff was not serious about what had happened and treated the violation as it was "no big deal." (Dep. of Sally Dollard ("Dollard Dep.") at 70:10-23.)

Plaintiff was terminated from employment with defendant on January 6, 2007, when she was approximately 59 years old. Dollard provided information about plaintiff's performance, but Lisa Lalama and Jim Sowatzke made the decision to terminate plaintiff's employment. (DF ¶ 36.) Defendant asserts plaintiff was terminated because she violated the "Recruiting the Basic" policy when she enrolled the wrong household for equipment installation and because she previously violated policies and

/////

/////

/////

---

[2] Despite having the wrong address, the technician was able to find the appropriate house to install the metering equipment. (DF ¶ 28.) The technician, a fairly new field representative, received verbal counseling, but no formal discipline for failing to correct the address in the company software. (DF ¶¶ 28-29.)

procedures as documented in the DIP.  Plaintiff asserts she was
terminated on account of her age and disability.[3]

     During the course of her employment with defendant,
plaintiff told Dollard that her "feet hurt" because she had
peripheral neuropathy.  (UF ¶ 31.)  When Dollard asked plaintiff
about her feet, plaintiff replied that she was fine.  (UF ¶ 31.)
Plaintiff never requested an accommodation for her peripheral
neuropathy or any other medical condition related to her feet.
(UF ¶ 32.)  Plaintiff did not discuss her condition with any
other supervisors during her employment.  (UF ¶ 33.)  Plaintiff
testified that she had no reason to believe that any of the
people involved in the meeting regarding her termination had some
sort of animus against her because of her medical condition.
(Earl Dep. at 149:17-21.)

     After plaintiff's termination, plaintiff's territory was
reassigned to a forty-two year old MR.  (UF ¶ 35.)  In the months
just before and after plaintiff's termination, defendant hired
five MRs, three in their twenties and two in their early
thirties, for the territory in which plaintiff worked.  (DF ¶
47.)

---

[3]      In her statement of additional disputed facts,
plaintiff asserts that she was passed over several times in favor
of younger employees with less experience and that she was told
she was not promoted because "she didn't fit what they were
looking for."  First, this evidence lacks foundation.  Second,
the third party statement constitutes improper hearsay to the
extent plaintiff relies upon it for the truth of the matter
asserted.  Further, plaintiff fails to identify who made the
statement.  Finally, plaintiff fails to raise any argument based
upon this "evidence" in her opposition.  Accordingly, the court
does not consider this evidence in determining whether there is a
triable issue of fact regarding plaintiff's claims of age
discrimination.

On October 11, 2007, plaintiff filed her complaint in the Superior Court of the State of California in and for the County of Solano, alleging claims for (1) Age Discrimination in Violation of the Fair Employment and Housing Act ("FEHA"); (2) Disability Discrimination in Violation of the FEHA; and (3) wrongful termination in violation of public policy. On January 8, 2008, defendant removed the case to this court on the basis of diversity jurisdiction.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of

/////

1  evidence to support the nonmoving party's case." <u>Celotex Corp.</u>,

2  477 U.S. at 325.

3      Once the moving party has met its burden of proof, the

4  nonmoving party must produce evidence on which a reasonable trier

5  of fact could find in its favor viewing the record as a whole in

6  light of the evidentiary burden the law places on that party.

7  <u>See</u> <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th

8  Cir. 1995).  The nonmoving party cannot simply rest on its

9  allegations without any significant probative evidence tending to

10 support the complaint.  <u>See</u> <u>Nissan Fire & Marine</u>, 210 F.3d at

11 1107.  Instead, through admissible evidence the nonmoving party

12 "must set forth specific facts showing that there is a genuine

13 issue for trial."  Fed. R. Civ. P. 56(e).

**ANALYSIS**

**A.   FEHA: Age Discrimination**

16     Plaintiff brings claims under the Fair Employment and

17 Housing Act ("FEHA") for discrimination on the basis of age.

18 Defendants move for summary judgment on the ground that plaintiff

19 has not produced sufficient evidence to create a triable issue of

20 fact for violations of FEHA.

21     FEHA provides that it is "an unlawful employment practice"

22 for an employer to refuse to hire or employ, to bar or discharge

23 from employment, or to discriminate against any individual over

24 the age of 40 in terms, conditions, or privileges of employment

25 on the basis of age.  Cal. Gov. Code §§ 12926, 12941 (West 2006).

26 "Although the wording of the Fair Employment Housing Act and

27 title VII of the Federal Civil Rights Act of 1964 differs in some

28 particulars, the antidiscriminatory objectives and the overriding

public policy purposes are identical," and therefore, California courts refer to applicable federal decisions where appropriate. Sorosky v. Burroughs Corp., 826 F.2d 794, 803 (9th Cir. 1987) (citing County of Alameda v. Fair Employment & Hous. Comm'n, 153 Cal. App. 3d 499, 504 (1984); Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 (2000). "In particular, California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination, based on a theory of disparate treatment." Guz, 24 Cal. 4th at 354 (citing Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Martin v. Lockheed Missiles & Space Co., 29 Cal. App. 4th 1718, 1730 (1994); Ewing v. Gill Indus., Inc., 3 Cal. App. 4th 601, 610-11 (1992); County of Alameda, 153 Cal. App. 3d 499, 504 (1984)).

**1.    Prima Facie Case**

To establish a case of age discrimination in violation of FEHA, plaintiff must prove (1) he was a member of a protected class; (2) he was performing competently in the position he held; (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job; and (4) some other circumstance suggests discriminatory motive.  Guz, 24 Cal. 4th at 355 (citations omitted).

With respect to her prima facie case, defendant does not dispute that plaintiff was a member of a protected class or that she suffered an adverse employment action.  Rather, defendant argues that plaintiff fails to demonstrate that she was

/////

10

performing competently in her position or that defendant had
discriminatory motives for their conduct.

Plaintiff presents sufficient evidence that she was
competently performing in her position.  Plaintiff received a
satisfactory review during her last performance evaluation
received in 2006.  Dollard testified during her deposition that,
at the time of her evaluation, plaintiff was "performing up to
standard" and that she had no significant criticisms of
plaintiff's performance.  (Dollard Dep. at 143:24-144:8.)  While
the evaluation also noted that there were issues that needed
improvement and was completed prior to the final policy
violation, the court finds plaintiff's evidence sufficient to
support her prima facie case that she was performing her position
competently.

Plaintiff also presents sufficient evidence of
discriminatory intent for purposes of a prima facie case because
she was replaced by a substantially younger employee.  See Begnal
v. Canfield & Assocs., Inc., 78 Cal. App. 4th 66, 73-74 (1st
Dist. 2000) (collecting cases and noting that a plaintiff may set
forth a prima facie case of age discrimination by demonstrating
that she was replaced by a substantially younger person).
Plaintiff's territory was reassigned to a forty-two year old MR
after she was terminated.  Subsequently, defendant hired
employees in their twenties and thirties in the relevant office.
Assuming plaintiff was "replaced" by the forty-two year old
employee, although he was also over the age of forty, he was
still "significantly" younger than plaintiff.  See Hersant v.
Dep't of Soc. Servs., 57 Cal. App. 4th 997, 1005-06 (4th Dist.

1997) (holding that the plaintiff had established a prima facie case because he was replaced by a man that was over forty but seven years younger than him).

Accordingly, the court finds that plaintiff has set forth a prima facie case of age discrimination in violation of FEHA.

### 2. Legitimate, Non-discriminatory Resson

Under McDonnell Douglass, once the plaintiff makes out a prima facie case of discrimination, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for the adverse action. Guz, 24 Cal. 4th at 355-56. However, only the burden of production shifts; the ultimate burden of persuasion remains with the plaintiff. Burdine, 450 U.S. at 253.

Defendant presents evidence that plaintiff committed multiple violations of its policies and procedures. Specifically, plaintiff twice violated the company's gift policy; one of these violations occurred after a verbal warning and a company-wide e-mail reiterating the gift policy. Plaintiff also failed to have a Spec Map with her when enrolling a new house, which was recommended in defendant's procedure manual and was conduct for which plaintiff believed she could be terminated. Plaintiff's supervisor did not believe that plaintiff took this violation seriously or evinced respect for defendant's policies and procedures. In response to these violations, defendant gave plaintiff verbal warnings and a written DIP. Further, plaintiff received supplemental training for a policy violation relating to Quality Assurance. Finally, plaintiff failed to verify household address information and, as a result, enrolled the wrong household for equipment installation. According to defendant's

evidence, plaintiff did not take this final violation seriously. Subsequent to this last violation, plaintiff was terminated. Under these undisputed facts, defendant has presented sufficient evidence that plaintiff was terminated for the legitimate reason of violating company policy.  See Moore v. May Dep't Stores Co., 222 Cal. App. 3d 836, 840 (1990) (holding that there was good cause for termination as a matter of law where employee violated company procedures); Fowler v. Viarian Assocs., Inc., 196 Cal. App. 3d 34, 41-43 (1987) (holding that there was good cause for termination as a matter of law where, *inter alia*, employee refused to follow directions when he refused to disclose information).

> **3.  Pretext**

If the employer articulates a legitimate reason, the burden of production shifts back to the plaintiff to "attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive. Guz, 24 Cal. 4th at 356 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515-18 (1993)).  It is insufficient for an employee to show that the employer's decision was "wrong, mistaken, or unwise." Horn v. Cushman & Wakefield Western, Inc., 72 Cal. App. 4th 798, 807 (1st Dist. 1999).  "Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder *could* find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory

/////

1 reasons." Id. (emphasis in original) (internal quotations and
2 citations omitted).

3      A plaintiff may demonstrate pretext in one of two ways: "(1)
4 indirectly, by showing that the employer's proffered explanation
5 is unworthy of credence because it is internally inconsistent or
6 otherwise not believable, or (2) directly, by showing that
7 unlawful discrimination more likely motivated the employer."
8 Chuang v. Univ. of Calif. Davis, Board of Trustees, 225 F.3d
9 1115, 1127 (9th Cir. 2000).  The factual inquiry regarding
10 pretext requires a new level of specificity.  Burdine, 450 U.S.
11 at 255.  Plaintiff must produce *specific* and *substantial* evidence
12 that defendants reasons are really a pretext for discrimination.
13 Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 661
14 (9th Cir. 2002); see also Horn, 72 Cal. App. 4th at 807
15 (emphasizing that an issue of fact can only be created by a
16 conflict in evidence, not by speculation or conjecture or by
17 denying the credibility of the defendant's witnesses).

18      In support of her argument that defendant's asserted reason
19 for termination was merely pretext for age discrimination,
20 plaintiff asserts that she was treated differently from similarly
21 situated, younger employees.  First, plaintiff asserts that
22 employee 33071, who was under 40 years old, signed an incorrect
23 alternate, but was not terminated.  Employee 33071 enrolled a
24 house that did not have a cable television – a requirement to
25 match the "basic" household demographic.  This is not the same
26 violation committed by plaintiff.  While plaintiff's counsel
27 argues that plaintiff's violation was less serious, plaintiff
28 fails to offer any evidence to support the assertion that

1  defendant considered 33071's error to be more egregious or even
2  comparable to plaintiff's.   See Hicks v. KNTV Television, Inc.,
3  160 Cal. App. 4th 994, 1011 (6th Dist. 2008) (noting that "[a]
4  plaintiff is not allowed to recast an employer's proffered
5  nondiscriminatory reasons or substitute his business judgment for
6  that of the employer" and holding that a weeknight news anchor
7  was not necessarily similarly situated to a weekday news
8  anchor).[4]  Accordingly, plaintiff has not demonstrated that her
9  situation was equivalent to employee 33071 such that she should
10 have been treated the same.   See id.

11      Second, plaintiff attempts to compare herself to employee
12 36082, who was thirty-nine when he first signed an incorrect
13 alternate.  Again, plaintiff seeks to equate enrolling a house
14 that did not match the "basic" household demographic to enrolling
15 the wrong house for installation.  As set forth above, there is
16 no evidence that these are comparable offenses.  Further,
17 *assuming arguendo* that these violations are equivalent, employee
18 36082's treatment does not support plaintiff's assertion of
19 pretext.  While 36082 was thirty-nine when he committed his first
20 violation,[5] he was forty, and within the same protected class as
21 plaintiff, when he committed his second violation.  He was also
22 forty when he committed his third violation.  (See Pl.'s Ex. N at

23

24     [4]  Similarly, plaintiff consistently cites to deposition
25 testimony wherein deponents testify that employees are not
   terminated for clerical errors.  However, a full reading of the
26 deposition testimony reveals that defendant did not consider
   plaintiff's violation to be a mere clerical error.

27
   [5]  The court also notes that there is no evidence that
28 employee 36082 had committed policy violations prior to his first
   instance of signing an incorrect alternate.

D04042-43.). Employee 36082 received a written warning in the form of a Performance Improvement Plan ("PIP"), but was not terminated. As such, because employee 36082 was in the same protected class as plaintiff, defendant's failure to terminate him refutes rather than supports plaintiff's contention that defendant has a bias against employees based upon their age. At the very least, however, plaintiff's comparison is not persuasive as 36082 was in Earl's protected class at all relevant times. Cf. Beck v. United Food & Commercial Workers Union, 506 F.3d 874, 883 (9th Cir. 2007) ("Evidence that one or more similarly situated individuals *outside* of the protected class received more favorable treatment can constitute sufficient evidence of discrimination.").[6]

Plaintiff also asserts that defendant's failure to engage in the complete progressive discipline policy demonstrates pretext. Plaintiff concedes that she is an at-will employee; as such, she is not entitled to any or all steps within the disciplinary process. However, defendant's failure to apply the process to plaintiff would be relevant to the extent that similarly situated

---

[6]     The court also notes that in April 2008, defendant terminated a thirty-nine year old employee, an employee outside plaintiff's protected class, for the same violation committed by plaintiff, enrolling the wrong household for equipment installation. (Pl.'s Ex. N at D1915-18.) Similarly, in August 2007, defendant terminated a thirty-one year old employee, an employee outside plaintiff's class, for a policy violation. (UF ¶ 36.) This was the only employee, aside from plaintiff, who was terminated from the Benicia office since 2001 for violating company policy and procedure. (Id.) The court recognizes, though, that each of these instances occurred after plaintiff's termination. See Chuang, 225 F.3d at 1129 (noting that actions subsequent to the filing of a discrimination complaint will rarely be relevant as circumstantial evidence in favor of the employer due to the obvious incentive to shield itself from liability).

employees outside of plaintiff's protected class were given the benefit of the complete process while plaintiff was not.  As set forth above, plaintiff has failed to identify any similarly situated employees who were treated differently; rather, she only identifies employees who committed different violations. Accordingly, plaintiff's argument regarding defendant's failure to issue Earl a PIP before terminating her employment is unpersuasive.[7]

Finally, plaintiff contends that her expert's analysis of the statistical evidence supports her contention that defendant had a pattern or practice of discriminating on the basis of age. Specifically, plaintiff presents evidence that there is a statistically significant disparity between the age of defendant's workforce generally and defendant's MRs specifically and the age of the general civilian workforce.  (DF ¶¶ 49-54.)

---

[7]    In her opposition, plaintiff similarly asserts, without citation to any case or relevant legal authority, that defendant's violation of its own progressive discipline policy by terminating plaintiff without a PIP demonstrates pretext. Plaintiff relies on a statement in an e-mail sent by Bob Burns ("Burns"), Sowatzke's manager and mentor, providing, "As much as it sounds reasonable to terminate [the employee] without a PIP, it would not be consistent with our procedure." (Pl.'s Ex. H.) Plaintiff asserts that this is sufficient evidence to support her assertion that it was company policy to terminate employees only after placing them on a PIP.

However, defendant designated Sowatzke as the Person Most Knowledgeable on the topic of defendant's policies and procedures.  Sowatzke testified that defendant's policy did not require issuance of a PIP prior to termination.  (Sowatzke Dep. at 590:21-591:1.)  Plaintiff never deposed Burns.  Nor are there any documents, declarations, or other deposition testimony to support plaintiff's position that company policy required issuance of a PIP prior to termination.  Furthermore, there is no evidence that the employee the e-mail referred to had committed the same violation as plaintiff; rather, it appears that he enrolled an alternate household that did not match the basic requirements. (Pl.'s Ex. H.)  As such, this evidence is insufficient to raise a triable issue of fact regarding pretext.

1  Statistical evidence may be relevant in an age discrimination

2  case because "it can be used to establish a general

3  discriminatory pattern in an employer's hiring or promotion

4  practices." <u>Diaz v. Am. Tel. & Tel.</u>, 752 F.2d 1356, 1363 (9th

5  Cir. 1985).  Such a pattern may be probative of motive and

6  "create an inference of discriminatory intent with respect to the

7  individual employment decision at issue." <u>Id.</u>  Absent

8  explanation, nondiscriminatory hiring practices will generally

9  result in a workforce more or less representative of the

10 population of the community from which employees are hired.  <u>Id.</u>

11 (quoting <u>Int'l Brotherhood of Teamsters v. U.S.</u>, 431 U.S. 324,

12 340 n.20 (1977)).  Therefore, general population statistics are

13 often useful as a proxy pool of potential applicants "when the

14 challenged employer practice screens applicants for entry level

15 jobs requiring little or no specialized skills." <u>Moore v. Hughes</u>

16 <u>Helicopters, Inc.</u>, 708 F.2d 475, 482 (9th Cir. 1983).  However,

17 where "special skills are required for a job, the proxy pool *must*

18 be that of the local labor force possessing the requisite

19 skills." <u>Id.</u> (emphasis added); <u>see</u> <u>Hazelwood Sch. Dist. v. U.S.</u>,

20 433 U.S. 299, 308 n.13 (1977) (similar analysis of proper labor

21 pools in disparate treatment cases).  In this case, it is

22 undisputed that MR position requires a college degree or

23 equivalent experience.  As such, special skills are required.

24 Plaintiff's expert, however, compared the age of defendant's

25 workforce, and MRs in particular, to the general civilian labor

26 force, which does not represent the qualified labor market for MR

27

28

positions.[8]  Plaintiff fails to present any statistical evidence comparing defendant's workforce to the relevant proxy pool.[9]  As such, her expert analysis fails to raise a triable issue of fact regarding a pattern or practice of discrimination and thus, an inference of discriminatory motive in this case.

Looking at all of plaintiff's evidence together, plaintiff has failed to submit either specific or substantial evidence that defendant's reasons for termination were pretextual.  Plaintiff has failed to present any evidence that defendant or her supervisors ever made any explicit comments that would implicate discriminatory intent or motive.  Cf. Messick, 62 F.3d at 1231 (finding a triable issue of fact of pretext of age discrimination where the evidence demonstrated, in part, that the plaintiff's supervisor repeatedly commented to the plaintiff, coworkers, and customers about plaintiff's age).  At most, plaintiff has demonstrated that she was replaced by a younger employee and that she did not receive the full progressive discipline policy.  However, she has failed to show that similarly situated younger employees were given more favorable treatment or treated differently.  Plaintiff has also failed to present any evidence that defendant's proffered reasons are not worthy of credence.

---

[8]     The civilian labor force consists of all individuals aged 16 years or older employed or seeking employment in the United States.

[9]     In response to the court's specific questions on this matter at oral argument, plaintiff's counsel asked the court to infer that the statistical disparities would be the same or even greater if the proxy pool was limited to those qualified for the MR position.  However, plaintiff has submitted no evidence to support such an inference; nor is the court inclined to speculate on matters that generally require expert analysis and testimony.

1    Therefore, for the foregoing reasons, defendant's motion for

2    summary judgment regarding plaintiff's claim for age

3    discrimination in violation of FEHA is GRANTED.

4    **B.    FEHA: Disability Discrimination**

5        Plaintiff also brings claims under FEHA for discrimination

6    on the basis of disability.  Defendants move for summary judgment

7    on the ground that plaintiff has not produced sufficient evidence

8    to create a triable issue of fact for violations of FEHA.

9        In her opposition, plaintiff devotes approximately two pages

10   of argument in support of her claim, relying primarily on her

11   assertion that the subject of plaintiff's peripheral neuropathy

12   "came up at work many times in meetings during which her

13   supervisor, Sally Dollard, was present."  (Pl.'s Opp'n at 19.)

14   Plaintiff offers no support for her apparent contention that an

15   employer's mere knowledge of a disability is sufficient to raise

16   a triable issue of fact that an employee suffered discrimination

17   on the basis of that disability.  Rather, plaintiff conclusorily

18   argues that "[s]ome] of the most significant of [plaintiff's

19   evidence regarding age discrimination] also creates triable

20   issues of fact as to whether defendant's termination is a pretext

21   for disability discrimination."  (<u>Id.</u> at 19-20.)

22       The court disagrees.  Plaintiff has failed to present any

23   evidence demonstrating discriminatory intent based upon her

24   disability.  Further, as set forth above, none of plaintiff's

25   evidence raises a triable issue of fact regarding age

26   discrimination; it similarly fails to raise a triable issue of

27   fact regarding disability discrimination.

28   /////

1    Therefore, defendant's motion for summary judgment regarding
2    plaintiff's claim for disability discrimination in violation of
3    FEHA is GRANTED.

4    **C.   Wrongful Termination in Violation of Public Policy**

5         Finally, plaintiff claims that she was wrongfully terminated
6    in violation of public policy because she was terminated on the
7    basis of her age and/or disability.  <u>See</u> <u>Stevenson v. Superior</u>
8    <u>Court</u>, 16 Cal. 4th 880, 897 (1997) (holding that "FEHA's policy
9    against age discrimination in employment is sufficiently
10   substantial and fundamental to support a tort claim for wrongful
11   discharge").  For the reasons set forth above, plaintiff's FEHA
12   claims for age and disability discrimination fail; accordingly,
13   plaintiff's claim for wrongful termination in violation of public
14   policy also fails.  <u>See</u> <u>Sanders v. Arneson Prods., Inc.</u>, 91 F.3d
15   1351, 1354 (9th Cir. 1996).  Therefore, defendant's motion for
16   summary judgment regarding plaintiff's claim for wrongful
17   termination in violation of public policy is GRANTED.

18                               **CONCLUSION**

19        For all the above reasons, defendant's motion for summary
20   judgment is GRANTED.  The Clerk of Court is directed to close
21   this file.

22        IT IS SO ORDERED.

23   DATED: September 28, 2009

24

25                               _____

26                               FRANK C. DAMRELL, JR.
                                 UNITED STATES DISTRICT JUDGE

27

28